UNITED STATES of America

v.

GROSS REALTY AND CONSTRUCTION
CO.

UNITED STATES of America

v.

REGENCY TOWER ASSOCIATES NO. 2

Civ. A. Nos. 83–1198, 83–1199.

United States District Court,
E.D. Pennsylvania.

Jan. 24, 1984.

Richard J. Stout, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Ronald H. Surkin, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

In these actions the United States, on behalf of the Secretary of Housing and Urban Development ("HUD"), seeks orders of foreclosure on federally insured mortgages and security agreements because of non-payment by defendants (collectively, for the sake of convenience, "Gross Partners").[1] Gross Partners admit non-pay-

1. The two actions, United States v. Gross Realty and Construction Co., Civil Action No. 83–1988, and United States v. Regency Tower Associates No. 2, Civil Action No. 83–1199, involve certain realty and personalty commonly known as Re-gency Park Towers I and II. However, they function as one property. Additionally, defendants are essentially the same in both actions, and the pleadings and motions are identical

ment but have asserted several affirmative defenses and a counterclaim to HUD's actions. The case is now before the court on plaintiff's motions for summary judgment. For the following reasons, plaintiff's motions are GRANTED.

The property at issue, Regency Towers I and II, is a rental housing project operated by Gross Partners. In 1971, Gross Partners executed mortgage notes on the two structures, and subsequently executed additional security agreements related to financing the operation. All of these instruments were insured by HUD. In 1978 severe structural problems became apparent. Gross Partners began repair, and litigation with the builder ensued. Since June, 1978, Gross Partners have not kept current the monthly payment obligations. The security instruments were assigned to HUD by the lending institutions in 1979, and since then HUD has assumed financial responsibility for the payments and taxes. Also during this time HUD and Gross Partners have been discussing workout agreements as an alternative to foreclosure. No formal agreement has ever been reached.

HUD filed its claim in March 1983, seeking an order decreeing foreclosure on the security agreements and determining the liability of Gross Partners. HUD also seeks an order granting HUD or a designated receiver the right to immediate possession and management of the premises. Gross Partners answer that although they have failed to make payments, HUD agreed not to foreclose while defendants worked to remedy the structural problem. They also contend that a workout agreement was reached, albeit not a formal one. Therefore, Gross Partners contend this action is inappropriate due to estoppel or waiver and constitutes an abuse of discretion, a violation of federal regulations, and deprivation of property without due process of law.

Gross Partners' initial response to plaintiff's motions for summary judgment was simply that they had not had enough time to complete discovery and therefore could

not respond adequately to plaintiff's motions. Since then additional discovery has taken place and Gross Partners have filed a lengthy response with voluminous attachments. The thrust of all this paper is that summary judgment is barred by Gross Partners' assertion of the defenses listed above; however, none of the arguments creates an issue of material fact or otherwise precludes summary judgment in favor of plaintiff.

Gross Partners first raise the defense that HUD's foreclosure action is arbitrary and capricious. HUD's right to foreclose is clearly established in federal statute, 12 U.S.C. § 1713, as well as by the mortgage instruments themselves. Several federal court decisions have suggested that the government's right to foreclose in these circumstances is virtually unequivocal. *See United States v. Golden Acres*, 520 F.Supp. 1073, 1075 (D.Del.1981); *United States v. Stadium Apartments, Inc.*, 425 F.2d 358 (9th Cir.1970); *United States v. Sylacauga Properties, Inc.*, 323 F.2d 487, 491 (5th Cir.1963); *United States v. Woodland Terrace, Inc.*, 293 F.2d 505, 507 (4th Cir.), *cert. denied*, 368 U.S. 940, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961). Nevertheless, the government's decision to foreclose must not amount to an abuse of discretion.

■ The standard to be applied in judicial review of agency decisions of this sort is a narrow one. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971). The court is directed to look first at whether the administrative agency acted within its statutory authority. It must then determine whether the agency's exercise of its discretion was based on consideration of all relevant factors, and whether there was clear error of judgment. The court is cautioned not to substitute its judgment for that of the agency. *Id.*

■ Here, the general authority to foreclose is found in 12 U.S.C. § 1713. Although the statute contains no indication of the standards or factors which should

except as to the amounts claimed and the partic-

ular realty/personalty.

guide HUD in making foreclosure decisions, the most likely source is the National Housing Act. *See* 42 U.S.C. § 1441. *See also, United States v. Winthrop Towers,* 628 F.2d 1028, 1034 (7th Cir.1980); *United States v. Golden Acres, Inc.,* 520 F.Supp. 1073 (D.Del.1981).

The National Housing Act gives HUD broad discretionary authority. *Shannon v. United States Department of Housing and Urban Development,* 436 F.2d 809 (3rd Cir.1970). Although the Third Circuit has not spoken on this, other circuits have held that HUD may weigh heavily the need to minimize losses to the insurance fund in any decision to exercise its discretion. A primary concern is protection of the security of federal investment in housing. *United States v. Winthrop Towers,* 628 F.2d at 1036; *United States v. Victory Highway Village, Inc.,* 662 F.2d 488, 495 (8th Cir. 1981); *Federal Property Management Corp. v. Harris,* 603 F.2d 1226, 1230 (6th Cir.1979); *United States v. Sylacauga Properties,* 323 F.2d 487 (5th Cir.1963). The underlying concept is that the National Housing Act was intended primarily to benefit tenants as opposed to commercial developers.

Gross Partners devote many pages to establishing that HUD officials knew of the structural defects that plagued the apartment project. They make much of the fact that under HUD's stated policy the government is "more likely to choose foreclosure" if the owner has mismanaged its project than if the project has gone into default because of conditions beyond the owner's control. This policy, a mere statement of preference or likelihood, fails to create a material issue as to whether the government acted arbitrarily or capriciously.

Gross Partners also contend that HUD proposed a workout agreement that Gross Partners accepted and that the government acted arbitrarily in seeking foreclosure despite the agreement. The underlying undisputed facts are as follows.

In July, 1980 HUD proposed a workout agreement under which Gross Partners would keep the tax escrow current, reimburse HUD over a three-year period for some $370,000 in delinquent tax escrow per building, and immediately remit $10,000 to the government representing interest on advances made by HUD for payment of taxes. One year later, having received no response, HUD informed Gross Partners that foreclosure would be recommended if the workout agreement was not signed and returned immediately. Further negotiations ensued and on August 3, 1981 James Harbison, a local HUD official, sent Gross Partners a sample workout agreement from a HUD handbook. Mr. Harbison advised Gross Partners that a workout proposal on their part should incorporate the points covered in the sample agreement. The sample workout agreement contained no suggested dollar figures. It was largely just a copy of HUD's July, 1980 workout agreement without any designated payment schedule.

On October 22, 1981 Gross Partners submitted its workout proposal. The proposed payment term was "at least $5000.00" per month per building. This was merely enough to keep the taxes on the building current and allowed for no reduction of delinquent taxes or interest accrued on HUD advances. Not surprisingly, HUD rejected the workout proposal. In its January 14, 1982 letter rejecting Gross Partners' October 22 proposal, the HUD Philadelphia area office set forth nine points that needed to be addressed. Gross Partners' argument hinges in large part on whether an adequate response to those nine points would constitute a binding workout agreement. Assuming Gross Partners' response to the January 14 letter was adequate, I find that no binding workout agreement was created.

The January 14 letter in no way indicates that response to its concerns would yield a contract binding on HUD. In fact, Gross Partners do not argue that it does. Instead, they rely on deposition testimony of HUD officials as establishing this point. Unfortunately for Gross Partners no HUD official provided the unequivocal testimony

sought by Gross Partners. Instead, one official testified that if Gross Partners met the concerns of the January 14 letter "hopefully they [the central office in Washington] would approve it." Another stated that the January 14 letter represented "the minimal points that would have to be addressed before the Area Office would be in a position to recommend a workout to Central Office." In addition, according to the exhibits attached to Gross Partners' brief, Field Offices did not have authority to approve workout agreements that were to last for more than twelve months. Thus, I cannot conclude that an adequate response to HUD's January 14 letter would have constituted a binding workout agreement that would bar summary judgment at this time.

After Gross Partners responded to HUD's January 14 letter HUD stated four additional prerequisites to a workout agreement.[2] Gross Partners would be required to (1) remit one-half of the delinquent interest, (2) remit 100% of all escrow advances, (3) keep ongoing mortgage payments current and (4) bring the remaining interest delinquency current within three years. Gross Partners contends that these requirements were arbitrary and capricious.

Gross Partners first contends that the imposition of these four requirements was arbitrary because they were imposed after a workout agreement was reached. Because I have concluded no such agreement was reached I must reject this argument.

Gross Partners next argues that imposition of the four requirements was arbitrary and capricious because the requirements contradict HUD's written policies governing foreclosure. In fact, HUD's written policies governing foreclosure are stated more in terms of general goals than in terms of specific requirements. Thus, the very documents on which Gross Partners rely contain guidelines such as "duration of workouts varies depending on circumstances" and "in all cases HUD staff must determine if it is in the best interests of the government to enter into a workout or modification, rather than to foreclose on the property."[3] Analyses of the financial viability of the project are to be made. Gross Partners does not allege that such analyses were not made.

In this case, Gross Partners failed to keep the debt current for over five years. The increase in the debt resulting from unpaid interest, taxes and other charges has been estimated to be in excess of $4 million, for a total outstanding debt of $12 million. I see no error of judgment by HUD in its decision to foreclose under those circumstances. Clearly HUD was obliged to minimize its losses in light of this long overdue debt, and foreclosure was well within its discretionary authority.

▪ Defendants also raise the defense that HUD should be estopped from foreclosing on the mortgage. The contention is that there was an "understanding" between Gross Partners and HUD that there would be no foreclosure action because of the hardship associated with the structural defects. The "understanding" also contemplated a workout agreement to establish Gross Partners' revised payment obligation.

Gross Partners seek to establish that the understanding exists by affidavit testimony of Jay Gross. However, the affidavit is fraught with conclusions and is devoid of facts. It merely asserts that there was an understanding between the parties, without any indication of the terms of such agree-

---

**2.** Apparently these requirements were actually first verbally stated to Mr. Gross in a meeting with HUD officials prior to Gross Partners' response to the January 14 letter.

**3.** To the extent HUD's written policies contain specific guidelines, they underscore the inadequacies of Gross Partners' proposed workout. For example, HUD's handbook provides that "no arrangement shall call for a payment of less than the monthly amount due for service charge, taxes, and one-half of the interest due." HUD-Held Project Servicing Handbook 4360.1 CHG6, Chapter 5, page 4. In addition, an owner must cure service charge and tax delinquencies prior to any workout agreement if "no project funds are available to cure the delinquencies during the first month of the workout." *Id.* at page 5.

ment, when it was reached, or the HUD official who authorized it. I find it difficult to believe that Gross Partners would not have embodied the agreement, if one existed, in written form in order to protect itself from actions of this type. Additionally, plaintiff has opposed this contention by submitting affidavits of eight employees and officers at HUD familiar with this case over the past several years. All of them deny that HUD personnel agreed not to foreclose. HUD also points to several letters to Gross Partners indicating HUD's intent to foreclose. In fact, several letters attached to Gross Partners' memorandum make reference to HUD's warnings of impending foreclosure. *See* Exhibits E, I, and K.

FRCP 56 requires that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits ... must set forth specific facts showing that there is a genuine issue for trial." FRCP 56(e). The Gross affidavit does little more than state in conclusory terms that there was an understanding, without support of any specifics or documentation. This alone would lead me to conclude that summary judgment is appropriate. *SEC v. Bonastia,* 614 F.2d 908, 914 (3d Cir.1980); *U.S. v. Golden Acres,* 520 F.Supp. 1073, 1079–1080 (D.Del.1981) (conclusory statements in affidavit alleging workout agreement insufficient to raise an issue of fact concerning waiver or estoppel).

However, there are more compelling reasons to reject defendants' conclusory assertion of an estoppel defense. It has been traditionally held that the government cannot in any way be bound by the unauthorized acts of its employees. *Federal Corp. Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Here, defendants have not provided this court with the identity of the HUD official(s) who allegedly entered into the agreement with Gross Partners, while HUD has brought forward affidavits from a number of high ranking HUD officials who have been involved with the case and who would have this authority. Absent an indication of who authorized the agreement, I have no basis to infer that the agreement was properly reached.

In addition, several circuits have ruled that estoppel is not a valid defense to a foreclosure action brought by the government on facts similar to those presented by this case. That is, statements by HUD officials that HUD will take no foreclosure action pending arrangement of alternate workout agreements do not work an estoppel against the exercise of the right to foreclosure as clearly defined in the statute and reserved in the mortgage. *United States v. Victory Highway Village, Inc.,* 662 F.2d 488, 495–497 (8th Cir.1981); *United States v. Sylacauga Properties, Inc.,* 323 F.2d 487 (5th Cir.1963); *United States v. Woodland Terrace,* 293 F.2d 505, 509 (4th Cir.1961), *cert. denied,* 368 U.S. 940, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961). *See also Kent Farm Co. v. Hills,* 417 F.Supp. 297, 302–303 (D.D.C.1976).

Because the facts as presented by the parties, and the law as uniformly applied in other circuits all lead to the conclusion that estoppel is not a valid defense here, I reject defendants' estoppel theory.

Gross Partners' third defense is that HUD created an impossibility of performance of Gross Partners' debt obligations by entering into the agreement not to foreclose discussed previously. Because I have found there is no showing that an agreement existed, this defense is unavailing on the motion for summary judgment.

Defendants' fourth and fifth defenses allege violations of unspecified government regulations. These defenses apparently are tied into Gross Partners' allegations that the government acted arbitrarily in seeking foreclosure here. Having rejected that argument above, I find that defendants' fourth and fifth defenses are no bar to summary judgment.

 Finally, Gross Partners allege that the foreclosure actions will result in a deprivation of property without due process of law. In a foreclosure context, due process requires that the owners and mort-

**236**

gagors be given notice and an opportunity to be heard before the action proceeds. *Hoffman v. HUD*, 519 F.2d 1160, 1167 (5th Cir.1975). Gross Partners again have advanced no factual allegation to support this defense. To the contrary, the record reflects more than adequate procedural safeguards.

Accordingly, the United States's motions for summary judgment will be granted.