**UNITED STATES of America, Plaintiff,**

v.

**OCCI COMPANY, a partnership, Defendant.**

**No. 82–C–014.**

United States District Court, E.D. Wisconsin.

Feb. 16, 1984.

Eric J. Klumb, Asst. U.S. Atty., Milwaukee, Wis., John H. Mahoney, Assoc. Regional Counsel, Chicago, Ill., Jeremy Beitz, Chief Counsel, Milwaukee, Wis., for plaintiff.

John W. Daniels, Jr., Quarles & Brady, Milwaukee, Wis., for defendant.

**ORDER**

WARREN, District Judge.

The United States brought this action, on behalf of the Secretary of Housing and Urban Development ("HUD"), to foreclose on a federally insured mortgage. The government has moved this Court for an order granting summary judgment. Defendant mortgagor, OCCI Company ("OCCI"), argues that genuine issues of material fact remain unresolved, making entry of summary judgment inappropriate. For the reasons set forth below, the Court is persuaded that judgment should be entered in favor of the plaintiff.

## FACTS

On May 9, 1971, OCCI, a partnership, executed a note in the amount of $3,194,-600.00 secured by a mortgage on a low and moderate income housing project known as Apollo Village Apartments ("Apollo"), to the First Wisconsin National Bank of Milwaukee. First Wisconsin assigned the note and mortgage to the Prudential Insurance Company on May 4, 1971. HUD became the owner of the note and mortgage by assignment from Prudential in November of 1974.

It is undisputed that when HUD acquired the mortgage, defendant was in default under the note due to failure to pay at least one installment due December 1, 1973. Sometime in 1975, OCCI and HUD entered negotiations seeking to bring payments current and to remedy serious physical defects in the Apollo properties. These negotiations culminated in a proposed provisional workout submitted to OCCI by HUD officials on March 11, 1975 ("1975 Workout"). It is unclear whether OCCI ever formally accepted this proposed workout, but it does appear that it did attempt to make reduced principal and interest payments thereunder.

Apparently, neither defendant's payment record nor the physical condition of Apollo improved much, if at all, under this workout and the parties again entered negotiations sometime in 1980. These negotiations culminated in a proposal by OCCI that HUD assume the status of mortgagee-in-possession for a period of five to seven years, while OCCI would retain its ownership interest in the project. HUD rejected this proposal due to the large delinquency on the loan (approximately $180,000.00), the substantial cost of repair (approximately $400,000.00), and OCCI's inability to contribute new funds to the project.

Finally, in May of 1981, HUD officials decided to foreclose. Formal action was delayed several times while OCCI attempted to negotiate the sale of the property. On January 11, 1982, plaintiff started the present action alleging an accelerated principal balance of $3,053,283.73 through June 15, 1981, and interest accruing at 8½% per annum.

OCCI resists the present motion for summary judgment essentially on three fronts. First, it argues that a defect in the assignment from First Wisconsin to Prudential raises a genuine issue of material fact concerning whether HUD is the record owner of the mortgage. Second, defendant contends that a genuine issue of material fact exists over whether HUD waived the 1973 default in the 1975 workout. Finally, OCCI contends that HUD exercised its discretion to foreclose in an arbitrary and capricious manner. The Court finds each point to be without merit.

## DISCUSSION

### 1. *Defect in Assignment*

Defendant argues that the assignment from First Wisconsin to Prudential was defective under Wis.Stats. § 706.03(2) because it was not signed by two officers of the bank. Defendant claims such defect is apparent on the face of the assignment (Exhibit G to plaintiff's complaint) because the signature of James Wm. Dwyer does not designate him as an officer of the bank. The Court is persuaded that no defect in fact exists.

■ Mr. Dwyer is designated as "Assistant Mortgage Division Counsel" on the assignment document. Defendant has offered no proof that such position was not one of "officer" within the meaning of Wis. Stat. § 706.03(2). On the contrary, plaintiff has offered the affidavit of John J. Poehlman, a vice president of the bank and the other officer to sign the assignment, stating that Mr. Dwyer at the time of the signing was an officer duly authorized to countersign mortgage assignments on behalf of the bank. This uncontroverted affidavit leaves no doubt that the First Wisconsin assignment was valid. Thus, no genuine issue of material fact exists regarding the assignment that precludes entry of summary judgment in plaintiff's favor.

## 2. *Waiver of the 1973 Default.*

Defendant submits the affidavit of OCCI's managing partner, Dr. Louis T. Maxey, to support its contention that an issue of material fact exists regarding waiver of the 1973 default. Dr. Maxey states that in 1975 he "had several meetings with officials of HUD, and a workout arrangement was developed, requiring the payment of certain sums. This workout agreement was consented to by HUD. A condition of the workout agreement was that prior defaults would be waived by HUD." (Maxey affidavit, ¶ 10.). Defendant also submits two documents from HUD files (defendant's exhibits 8 and 13) in which the 1975 workout is discussed. Neither document, however, contains or mentions a waiver of the 1973 default.

In opposition, plaintiff submits a letter from HUD to Dr. Maxey dated March 11, 1975, which contains the terms of the 1975 workout. (Plaintiff's reply brief, Exhibit A). This letter provides in part:

> 3. It is further understood that these arrangements are strictly on a month-to-month basis and may be discontinued at any time without notice, at the discretion of the Assistant Secretary for Renewal and Housing Management with the right being expressly reserved to take action under the mortgage at any time so long as a default exists.

This document is not signed by Dr. Maxey, but is the only document submitted regarding specific terms of the 1975 workout.

Defendant's argument is similar to that of the defendant-mortgagor in *United States v. Golden Acres, Inc.,* 520 F.Supp. 1073 (D.Del.1981). There the defendant submitted the affidavit of its Secretary-Treasurer to the effect that defendant had an implied agreement with HUD excusing it from making monthly payments. *Golden Acres* at 1078. The court, noting that on a motion for summary judgment it must draw all inferences from the evidence in favor of the party opposing the motion, held that defendant's conclusions, unsupported by documentation to specific facts, were insufficient to preclude summary judgment. *Golden Acres* at 1709–10.

Here, as in *Golden Acres,* defendant bases its claims of waiver solely upon the conclusory statements of one of the defendant's partners. The only documents submitted by defendant to support this conclusion contain no reference to waiver of the 1973 default. Moreover, unlike *Golden Acres,* the defendant here has submitted a document directly controverting Dr. Maxey's conclusory statements. This would appear, then, to be an even stronger case for summary judgment than that in *Golden Acres.*

■ Assuming, however, that Dr. Maxey's failure to sign the March 11, 1975 letter indicates his lack of consent to this agreement, the Court notes that provisional workout agreements between HUD and mortgagors have been held not to modify or supersede the underlying mortgages and notes. *United States v. 1300 LaFayette East,* 455 F.Supp. 988, 991 (E.D.Mich.1978); *United States v. Victory Highway Village,* 662 F.2d 488, 495 (8th Cir.1981). Consequently, this Court is convinced that defendant has failed to raise any issue of material fact with regard to the 1973 default that would prevent summary judgment in favor of the plaintiff.[1]

## 3. *HUD's Exercise of Discretion.*

Defendant's third and last argument is to the effect that by foreclosing in this case HUD has exercised its discretion in contravention of congressional policy contained in the National Housing Act, 42 U.S.C. § 1441. The thrust of defendant's argument is that HUD arbitrarily and capriciously disapproved its proposed sale of the Apollo properties, thus frustrating Congress' policy of encouraging private enterprise as a part of housing development.

---

**1.** Having found no merit in defendant's contention concerning waiver of the 1973 default, it is unnecessary to address defendant's arguments aimed at later defaults. The 1973 default is sufficient cause for acceleration of the debt and, thus, this foreclosure action.

Once again, this Court concludes that defendant's argument is without merit.

Defendant relies upon *United States v. Winthrop Towers*, 628 F.2d 1028 (7th Cir. 1980) for the proposition that HUD's discretion in foreclosure actions is circumscribed by its duty to promote congressional policy. That decision went on to state, however, that HUD's discretion was subject to minimal judicial review, "because the National Housing Act was primarily intended to benefit individuals who live in inadequate housing, not commercial developers...." *Winthrop Towers* at 1036.

■ A review of the documents submitted regarding HUD's decision to deny OCCI's proposed transfer, drawing all inferences in favor of OCCI, shows that HUD did not abuse its broad discretion outlined in *Winthrop Towers*. Defendant submits the affidavits of Dr. Maxey and OCCI's attorney to support its contention that HUD arbitrarily "sat on" OCCI's proposed sale of the Apollo properties. The documents submitted with these affidavits contain no references to specific facts from which any inference of agency abuse may be drawn. Thus, once again defendant's only support for its argument is in the form of conclusory statements made by its managing partner and attorney.

Plaintiff, on the other hand, submits a letter from HUD's Acting Area Manager to OCCI's attorney specifically explaining why HUD disapproved of the proposed sale. (Plaintiff's reply brief, Exhibit U). Among the reasons set forth in this letter for disapproval of the proposed transfer, was its failure to provide cash contributions sufficient to remedy the physical deterioration of the Apollo properties.

The picture painted by this evidence is not one of arbitrary and capricious decision making on the part of HUD officials. Defendant's statements that HUD abused its discretion are unsupported by reference to any specific instances of abuse, while plaintiff submits documentation of a decision based on a recognized policy consideration. Providing "decent, safe and sanitary living quarters for low and moderate income families [is] consistent with the intent and purpose of the National Housing Act." *Kent Farm v. Hills*, 417 F.Supp. 297, 300 (D.D.C. 1976). No genuine issue of material fact reasonably can be said to exist with respect to HUD's exercise of discretion here. *Golden Acres* at 1709–10.

## CONCLUSION

In regard to HUD's foreclosure actions, the Seventh Circuit has stated, "we consider summary judgment an appropriate way to determine at an early stage the merit, if any, of a mortgagor's affirmative defenses." *Winthrop Towers* at 1037. Having found no merit in defendant's defenses, the Court has determined "foreclosure proceedings may go forward with expedition." *Id.*

It is, therefore, ORDERED, ADJUDGED and DECREED by the Court:

First: That an accounting be taken of the total amount due plaintiff for interest and principal within 45 days of the entry of this judgment;

Second: That defendant tender such amount as determined above within 30 days of the filing of such accounting with this Court;

Third: That in default of such payment, that all legal rights, title, and interest that defendant has in the Apollo Village Apartments be sold at public sale in accordance with 28 U.S.C. §§ 2001–2003 and that the amounts due to plaintiff be paid out of the proceeds of the sale;

Fourth: That the defendants and all persons claiming or who may claim by, from, or under them be absolutely barred and foreclosed from all rights and equity of redemption in the property.