Marjorie FRAKES, et al.,
Plaintiffs-Appellants,

v.

Samuel R. PIERCE, Jr., et al.,
Defendants-Appellees.

No. 81–4247.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1982.

Decided Feb. 28, 1983.

Mark T. Johnson, Greater Watts Justice Center, Los Angeles, Cal., Roberta Ranstrom, Legal Services of NoCal, Sacramento, Cal., Richard A. Rothschild, Patricia Tenoso, Los Angeles, Cal., Michael Bush, Legal Services of Northern Cal., Chico, Cal., for plaintiffs-appellants.

Howard Scher, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before KASHIWA,* WALLACE and ANDERSON, Circuit Judges.

KASHIWA, Circuit Judge:

Plaintiffs-appellants are tenants of federally-financed housing projects throughout California. They appeal from a judgment of the district court that granted summary judgment for defendants-appellees, the Secretary and other officials of the United States Department of Housing and Urban Development ("HUD") and two owners of housing projects. We affirm.

*Background*

Appellants are tenants in housing projects in California that have mortgages insured and subsidized by the federal government pursuant to either Section 221(d)(3) or Section 236 of the National Housing Act (the "Act"),[1] 12 U.S.C. § 1715*l* (d)(3) and 12 U.S.C. § 1715z–1, respectively. Appellants represent, for purposes of their claim for injunctive and declaratory relief, a statewide class of all persons who reside, or have resided since July 1, 1978, in subsidized Section 221(d)(3) and Section 236 projects in California.

---

* The Honorable Shiro Kashiwa, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. 12 U.S.C. §§ 1701–1750g (Supp. V 1981).

On July 1, 1978, Proposition 13, which California voters had passed on June 6, 1978, became effective. It limits taxes on real property to 1% of the full cash value of the property. Proposition 13, thus, substantially reduced the property taxes of all owners of taxable real property, including the owners of Section 221(d)(3) and Section 236 subsidized housing projects. Since property tax is one component of the operating expenses[2] of any housing project, operating expenses were correspondingly reduced.

During the period of July 1, 1978, through the filing of this lawsuit on January 29, 1979 and beyond, tenants of subsidized housing were charged rents based on pre-Proposition 13 rent schedules, which did not reflect the reduced operating expenses due to substantially lower property taxes. The rental charges of each housing project, which are based on the operating expenses of that project, must be approved by the Secretary.[3]

On February 14, 1979, after the initial complaint was filed, the Secretary announced a rent reevaluation plan to address the effects of Proposition 13 on operating expenses. The Secretary's plan called for the submission by each project owner of, *inter alia,* (1) the financial statement of his project since the last annual financial statement, (2) post-Proposition 13 tax bills, (3) proposed rent schedules, and (4) evidence of compliance with any requirement that physical improvements be made to the project.

Based on these considerations, some rental charges were increased, some were decreased, and some remained the same. In addition, this review revealed that relatively few projects had surplus cash available at the end of 1978. As a result, HUD did not order project owners to make retroactive rent rebates to tenants.

*Proceedings in the District Court*

In their complaint and amended complaint, appellants sought retroactive reduction of rental charges and refund of surplus monies (rebates) resulting from Proposition 13 tax savings. In addition, appellants filed motions for a preliminary injunction and for certification of the plaintiff and defendant classes. In April, 1979, the Secretary filed a motion to dismiss the complaint or, alternatively, for summary judgment. On August 31, 1979, the district court (Wilkins, C.J.) granted partial certification of the plaintiff class for injunctive and declaratory relief against the appellees (the Secretary and other HUD officials) but not for restitution (rent rebates). In addition, the district court rejected certification of the project owners as a defendant class. Further, the Secretary's motion for summary judgment was denied on the grounds that HUD had failed, as required, to reevaluate all California project rentals from the effective date of Proposition 13 (i.e., July, 1978), and that defects existed in the regional implementation of HUD's policy.

---

**2.** Operating expenses are not precisely defined by the Act or regulation. Section 1715z–1(f)(3) in pertinent portions stated, as of the date this action was filed, that:

> For each project there shall be established an initial operating expense level, which shall be the sum of the cost of utilities and local property taxes payable by the project owner * * *.

The language of the regulations and of the HUD handbook provisions identifies factors which need to be considered in approving allowable rents. The regulations limit the term "rents and charges" to those expenses "necessary to maintain the economic soundness of the project" and "provide a reasonable return on the investment consistent with providing reasonable rentals to tenants." 24 C.F.R. § 221.-531(c) (1982). A litany of expenses such as mortgage payments, management expenses, and maintenance and security expenses is enumerated in HUD handbook 4350.1, Ch. 4, ¶ 3c. Paragraph 3c(3)(b)4 states:

> *Normally, consideration is not given* to anticipated increases in operating expenses, except for those which can be readily foreseen and determined with reasonable accuracy, such as real estate taxes, public utility charges, and firm contracts for services and supplies, especially those having escalation clauses. [Emphasis in original].

**3.** As a condition for receiving federal subsidies, owners of all Section 221(d)(3) and Section 236 projects are required to enter into a Regulatory Agreement with the Secretary. Pursuant to this agreement and applicable HUD regulations, the Secretary regulates all aspects of the operation of the projects, *inter alia,* rental charges. 24 C.F.R. §§ 221.529–535a (1982); 24 C.F.R. §§ 236.1–236.915 (1982).

On October 15, 1979, HUD submitted a report, as requested by the district court, detailing specific procedures in conducting its retroactive rent reevaluation plan. Shortly thereafter, the Secretary renewed his motion for summary judgment. The appellants countered with a motion to hold HUD in contempt for failure to follow the court's order of August 31, 1979. Appellants' motion was denied by the district court in May, 1980.

After several motions for reconsideration of previous rulings and an exhaustive check by HUD to determine whether all Section 221(d)(3) and Section 236 projects affected by Proposition 13 had been reevaluated, the district court (Ramirez, J.) granted the Secretary's motion for summary judgment on the ground that the Secretary's action in approving rental schedules after reevaluation and his decision not to allow retroactive rent rebates constituted agency action committed to agency discretion by law and hence not subject to judicial review.

Appellants now seek review of the district court's refusal to review the Secretary's reevaluation and adjustment of rents. Appellants also seek review of the district court's orders of August 31, 1979, and May 6, 1980, in which the court first, refused to certify the project owners as a defendant class, and second, limited certification of the plaintiff class to injunctive relief only.

*Judicial Review*

Appellants contend that the Secretary's actions are subject to judicial review. In particular, they contend that the Secretary's rent reevaluation policy was inadequate and in violation of the Act. Appellants cite a trio of Supreme Court decisions, *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); and *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), for the principle that there is a presumption in favor of judicial review of administrative agency action under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701–706 (1976).[4]

To illustrate the application of that principle, the appellants cite *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir.1974); *Russell v. Landrieu,* 621 F.2d 1037 (9th Cir. 1980); and *Davis v. United States Department of Housing and Urban Development,* 627 F.2d 942 (9th Cir.1980). We believe, however, the appellants have misplaced the emphasis of these cases. None of the cases deals with the question of whether federal courts have jurisdiction to review HUD rental determinations. Rather, they deal with the questions of minimal due process requirements of opportunity for comment and notice required for rental increases, the Secretary's foreclosure procedures, and the Secretary's decision to approve block grant assistance for municipalities, respectively.

In general, Section 701 of the APA provides for judicial review of administrative actions unless such review is prohibited by either statute or where agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 410, 91 S.Ct. at 820. When it appears from the

---

4. *See Keating v. Federal Aviation Admin.,* 610 F.2d 611 (9th Cir.1979) (pilot age regulation); *Kitchens v. Department of the Treasury,* 535 F.2d 1197 (9th Cir.1976) (petition for relief from federal disabilities); *Arizona Power Pooling Ass'n v. Morton,* 527 F.2d 721 (9th Cir. 1975) (preference right to bid for federally owned electric power), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *County of Alameda v. Weinberger,* 520 F.2d 344 (9th Cir.1975) (welfare fund disallowances); *Montana Chapter of Ass'n of Civilian Technicians v. Young,* 514 F.2d 1165 (9th Cir. 1975) (Air National Guard regulations); *Roth-*

*man v. Hospital Serv. of S. Cal.,* 510 F.2d 956 (9th Cir.1975) (Medicare reimbursements); *National Forest Preservation Group v. Butz,* 485 F.2d 408 (9th Cir.1973) (exchange of national forest lands for railroad lands); *Bronken v. Morton,* 473 F.2d 790 (9th Cir.1973) (holders of land selection rights), *cert. denied,* 414 U.S. 828, 94 S.Ct. 51, 38 L.Ed.2d 62 (1973); *East Oakland-Fruitvale Planning Council v. Rumsfeld,* 471 F.2d 524 (9th Cir.1972) (economic opportunity grant funds); and *Rockbridge v. Lincoln,* 449 F.2d 567 (9th Cir.1971) (Indian reservation rules and regulations).

terms of a statute or from its legislative history that Congress intended the ultimate decisionmaking authority in a particular area to be within the administrative agency rather than in the courts, judicial review is foreclosed. *See Barlow v. Collins,* 397 U.S. at 166–167, 90 S.Ct. at 837–838. *See generally Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d 706 (9th Cir.1975).

In *Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958), involving a toll-making procedure for the Panama Canal, respondent Grace Line sued to compel petitioner, the Panama Canal Company, to prescribe new tolls for the use of the Canal and to refund tolls which it alleged had been illegally collected. The Court stated:

> Section 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C. § 1009 [predecessor of 5 U.S.C. § 701], excludes from the categories of cases subject to judicial review "agency action" that is "by law committed to agency discretion." We think the initiation of a proceeding for readjustment of the tolls of the Panama Canal is a matter that Congress has left to the discretion of the Panama Canal Co. Petitioner is, as we have seen, an agent or spokesman of the President in these matters. It is "authorized" to prescribe tolls and to change them. Canal Zone Code, Tit. 2, § 411. But the exercise of that authority is far more than the performance of a ministerial act. · As we have seen, the present conflict rages over questions that at heart involve problems of statutory construction and cost accounting: whether an operating deficit

in the auxiliary or supporting activities is a legitimate cost in maintaining and operating the Canal for purpose of the toll formula. These are matters on which experts may disagree; they involve nice issues of judgment and choice, which require the exercise of informed discretion. [Citations omitted].

*Id.* at 317, 78 S.Ct. at 757.

Although this court has not previously considered the question of whether HUD's determination of rental charges is reviewable or not,[5] other circuit courts have uniformly held that such determination is not reviewable. In the seminal case of *Hahn v. Gottlieb,* 430 F.2d 1243 (1st Cir.1970), in which the tenants of Section 221(d)(3) housing projects challenged HUD's approval of increased rents, the First Circuit stated:

> Looking first to the appropriateness of judicial review, we note that courts are ill-equipped to superintend economic and managerial decisions of the kind involved here. This is not a case which can be resolved by "judicial application of canons of statutory construction." *Compare Barlow v. Collins, supra* at 166, 90 S.Ct. at 837. A partial list of the issues raised by plaintiffs either in the FHA [a HUD agency] hearing or in the court below includes: whether the landlord's increased operating costs were attributable to poor design and construction defects; whether and to what extent costs attributable to such defects should be absorbed by the landlord or passed on to the tenants; whether estimates of the vacancy rate, of commercial occupancy, and of managerial expenses were reasonable; and whether the FHA had properly de-

---

**5.** This court has held other types of administrative actions to be non-reviewable. *See Nelson v. Andrus,* 591 F.2d 1265 (9th Cir.1978) (per curiam) (classification of desert lands); *City of Santa Clara v. Andrus,* 572 F.2d 660 (9th Cir. 1978) (withdrawal of hydroelectric power), *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978); *Arizona Power Authority v. Morton,* 549 F.2d 1231 (9th Cir.1977) (issuance of marketing criteria for allocating hydroelectric power), *cert. denied,* 434 U.S. 835, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977); *Strickland v. Morton,* 519 F.2d 467 (9th Cir.1975) (classification of homestead lands); *Ness Investment*

*Corp. v. United States Dep't of Agriculture,* 512 F.2d 706 (9th Cir.1975) (special use permit for forest land for resort purposes); *United ·States v. Capital Assistance Corp.,* 460 F.2d 256 (9th Cir.1972) (renewal of loan), *cert. denied,* 409 U.S. 941, 93 S.Ct. 233, 34 L.Ed.2d 193 (1972); and *Ferry v. Udall,* 336 F.2d 706 (9th Cir.1964) (administration and sale of public lands), *cert. denied,* 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965). *See generally* 4 K. Davis, Administrative Law Treaties § 28.16 (1958 & Supp. 1982); Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion,"* 82 Harv.L.Rev. 367 (1968).

termined the investment base for computing a reasonable return. Our only guides in answering such questions are the sometimes conflicting statutory goals of increased low-rent housing through private investment and the extremely broad regulatory criteria of maintaining "the economic soundness of the project" while insuring "a reasonable return on the investment consistent with providing reasonable rentals to tenants." 24 C.F.R. § 221.531(c). Under these circumstances, we willingly confess our incapacity to contribute intelligently to the general course of decisions on rents and charges. [Citations omitted].

*Id.* at 1249. The Second, Third and Seventh Circuits have followed *Hahn. See Grace Towers Tenants Association v. Grace Housing Development Fund Co.,* 538 F.2d 491 (2nd Cir.1976); *Harlib v. Lynn,* 511 F.2d 51 (7th Cir.1975); *People's Rights Organization v. Bethlehem Associates,* 356 F.Supp. 407 (E.D.Pa.1973), *aff'd mem.,* 487 F.2d 1395 (3rd Cir.1973); and *Langevin v. Chenango Court, Inc.,* 447 F.2d 296 (2nd Cir. 1971). *See also Dew v. McLendon Gardens Associates,* 394 F.Supp. 1223 (N.D.Ga.1975).

■ Similarly, we think HUD's rental determinations in the instant appeal are the kind of decisions which are within agency discretion. In the instant action, the Act directs the Secretary to regulate rents in Section 221(d)(3) projects "in such form and in such manner as in the opinion of the Secretary will effectuate the purposes of this section," 12 U.S.C. § 1715*l*(d)(3), and in Section 236 projects "in accordance with such requirements with respect to * * * rents as the Secretary may prescribe." 12 U.S.C. § 1715z–1(e). Such statutory direction requiring a balancing of a wide range of considerations and highly technical factors can only be accomplished by informed calls of judgment. *See Rank v. Nimmo,* 677 F.2d 692, 700 (9th Cir.1982). Moreover, unlike the applicable statute in *Panama Canal Company* which had prescribed certain criteria to be considered by the Company in setting tolls, the Act contains no such criteria with regard to the regulation of rents. In the instant appeal,

the considerations used by HUD encompassed a series of factors which were used in its reevaluation and adjustment of rents. Pursuant to the Secretary's announcement of February 14, 1979, HUD required each Section 221(d)(3) and Section 236 project owner to submit, *inter alia,* (1) the financial statement of his project since the last annual financial statement, (2) post-Proposition 13 tax bills, (3) proposed rent schedules, and (4) evidence of compliance with any requirement that physical improvements be made to the project. From this amalgam of different factors came adjustments in rents whereby some rents were increased, some were decreased, and some remained the same.

Further, this reevaluation revealed that relatively few projects had surplus monies available for retroactive rent rebates. If ordered, such rebates would deplete the residual receipts accounts of many projects. Each of these accounts was designed to benefit an entire project. Moreover, rebates would be both costly to administer (administration expenses would come from project funds), and would involve a substantial administrative burden on HUD. Accordingly, HUD did not order project owners to make retroactive rent rebates to tenants.

As stated by the First Circuit in *Falzarano v. United States,* 607 F.2d 506, 513 (1st Cir.1979):

The discretionary nature of the Secretary's duties and the dual goals of assuring financial integrity of the project and maintaining reasonable rents for low and moderate income tenants require a flexibility and ability to deal individually with each project. Close judicial supervision of approval of charges, categorization of charges into one account rather than another, and other formalizations of the decision making process would impede agency action.

Thus, the Act is the type of statute that is "drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park v. Volpe,* 401

U.S. at 410, 91 S.Ct. at 821. "The provisions of this statute breathe discretion at every pore." *Strickland v. Morton,* 519 F.2d 467, 469 (9th Cir.1975). As stated by the court below:

> In order to retain flexibility in the rent determination area, HUD must be permitted to assess the income needs of each project on an individualized basis. * * * [T]he acts of the Secretary in this area are best left to the discretion of the Secretary without the benefit or non-benefit of the actions of the courts.

We, therefore, hold that both the Secretary's reevaluation and adjustment of rents and his subsequent decision not to order rebates are beyond judicial review. In view of this holding, we need not and do not consider the issues of whether the Secretary's determinations are reasonable, whether material facts are in dispute, or whether the district court abused its discretion regarding class certification.

AFFIRMED.

**Editor's Note:** The opinion of the United States Court of Appeals, Ninth Circuit in *Northrop Corp. v. McDonnell Douglas Corp.* published in the advance sheet at this citation, 700 F.2d 506–535, was withdrawn from bound volume and is republished at 705 F.2d 1030.