Homer CLARY, Plaintiff-Appellant,

v.

Daryl MABEE, Samuel R. Pierce, Jr., Secretary of Housing and Urban Development (HUD) and HUD, Defendants-Appellees.

No. 82–3205.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1983.

Decided July 6, 1983.

Andrew C. Thomas, Idaho Legal Aid Services, Inc., Caldwell, Idaho, for plaintiff-appellant.

Jonathan Strong, Trial Atty., U.S. Dept. of Housing & Urban Development, Washington, D.C., for defendants-appellees.

Before WALLACE, ANDERSON, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

Plaintiff-appellant is a tenant in a low income, privately owned housing project. His rent is subsidized under the United States Housing Act of 1937, *as amended* 42 U.S.C. § 1437 *et seq.* (1976 & Supp. V 1981). He filed this action challenging the method by which his monthly utility allowance is computed and claiming entitlement to further utility subsidization by the Department of Housing & Urban Development (HUD). He now appeals from the district court's entry of summary judgment in favor of the government, and we affirm.

The project in which plaintiff resides is Portneuf Towers, a 72-unit one-bedroom apartment complex for the elderly in Pocatello, Idaho. Portneuf Towers receives federal rent assistance payments under section 8 of the Housing Act, 42 U.S.C. § 1437f, which makes privately owned housing available to lower income families. Under section 8, HUD provides subsidies to apartment owners, either directly by contract, or, as in this case, indirectly, through a contract between the owner and the state

housing agency. 42 U.S.C. § 1437f(b)(2). The agency in Idaho is the Idaho Housing Authority (IHA).

Under the statutory subsidization scheme, an "annual contribution contract" between the agency and the owner fixes the maximum monthly rent, including utilities, to which the owner is entitled. 42 U.S.C. § 1437f(b)(1). Section 1437f provides in relevant part:

> [a]n assistance contract entered into pursuant to this section shall establish the maximum monthly rent (including utilities and all maintenance and management charges) which the owner is entitled to receive for each dwelling unit with respect to which such assistance payments are to be made.

42 U.S.C. § 1437f(c)(1). The monthly rent must be comparable to the "fair market rental" for similar housing in the area, as established by the Secretary of HUD.

> The maximum monthly rent shall not exceed by more than 10 per centum the fair market rental established by the Secretary periodically but not less than annually for existing or newly constructed rental dwelling units of various sizes and types in the market area suitable for occupancy by persons assisted under this section, except that the maximum monthly rent may exceed the fair market rental by more than 10 but not more than 20 per centum where the Secretary determines that special circumstances warrant such higher maximum rent or that such higher rent is necessary to the implementation of a local housing assistance plan as defined in section 1439(a)(5) of this title.

*Id.*

The monthly rent received by Portneuf Towers under this scheme has two sources

—HUD's contractual contribution through the IHA and the rent paid by the tenant. The rental payment made by each resident family is a percentage of the family's monthly income fixed by the statute. 42 U.S.C. § 1437a(a). When plaintiff, who qualifies as a "very low income" tenant, filed this complaint, that percentage was 25 percent.[1] The amount of rental assistance HUD provides to the owner is limited to the maximum monthly rent HUD establishes for each unit, less the relevant percentage of the tenant family's income. 42 U.S.C. § 1437f(c)(3).

While the legislation clearly includes utilities as part of rent, 42 U.S.C. § 1437f(c)(1), the statute does not provide any particular method for calculating the utilities component of the rent. When tenants pay their own utility bills, as they do at Portneuf Towers, their rental obligation to the owner must be adjusted. 24 C.F.R. § 883.202 (1979). HUD regulations therefore have required the state agency to establish a "reasonable" allowance. *Id.*[2] Pursuant to a HUD directive, Portneuf computes its allowance annually by averaging the energy consumption of a one-fourth sample of the units. Portneuf then deducts the amount of allowance from the sum tenants would otherwise be charged for rent.[3]

This brings us to the problem which gives rise to this appeal. The plaintiff had utility bills which were higher than the average for Portneuf Towers. Thus his rental payments combined with his payments to the utilities generally exceeded 25 percent of his monthly income. This, plaintiff argues, was unlawful.

Plaintiff relies on former 42 U.S.C. § 1437a(1), the relevant portions of which

---

**1.** The statute at issue here has been revised since the time of plaintiff's complaint; the only revision material to plaintiff's claim is of the percentage of income which a very low income tenant is required to pay. In 1979, the figure was 25 percent. 42 U.S.C. § 1437a(1) (Supp. III 1979). The statutory limit is now 30 percent. 42 U.S.C. § 1437a(a) (Supp. V 1981).

**2.** The 1979 regulations continue to govern Portneuf Towers, because its application was submitted before revised regulations became effec-

tive, and no election to be governed by the later regulations was made. *See* 24 C.F.R. § 883.-105 (1982). The parties do not suggest that any changes in the regulations would be material to the issues in this case.

**3.** Thus, for example, a tenant earning $400 a month who paid 25 percent of his income for rent would normally pay $100. However, if he paid his utilities directly, and if the utility allowance were $25, his contribution to rent would be reduced to $75.

are identical to the current version of the statute, which provided in pertinent part:

> The rental for any dwelling unit shall not exceed that portion of the resident family's income which the Secretary establishes on the basis of the relative level of income of the family, but such rental shall not exceed 25 per centum of family income in the case of a very low income family . . .

42 U.S.C. § 1437a(1) (Supp. III 1979). Plaintiff contends that this statutory provision requires HUD to reimburse him, without any limitation, for amounts by which his utility bills exceeded the allowance. In effect, plaintiff reads section 1437a(1) as a guarantee that his utilities consumption, no matter how large, must always be covered by governmental subsidy.

■ The difficulty with the plaintiff's position is that it makes HUD's total obligation under the statute depend upon the unrestricted utilities consumption of the tenants, a factor wholly beyond HUD's control. This is inconsistent with the statutory scheme. It ignores the express limitation on the amount of rental assistance HUD may pay; that amount is the difference between the "maximum monthly rent," as established in the contract, and the appropriate percentage of the tenant's income.

> The amount of the monthly assistance payment with respect to any dwelling unit shall be the difference between the maximum monthly rent which the contract provides that the owner is to receive for the unit and the rent the family is required to pay under section 1437a(a) of this title.

42 U.S.C. § 1437f(c)(3). HUD has no statutory authority to pay more than that difference and hence, no authority to pay what appellant is asking.

Nor can section 1437a(1) be read as authorizing increased payments, as plaintiff suggests in his brief, "anytime appellant is required to pay more than 25 percent of his income for rent and utilities." Section 1437a(1) does not go that far. It does not provide that an individual's actual payments, including rent and utilities, can nev-

er exceed 25 percent of his income. Rather, it sets standards for determining the tenant "rental" per "dwelling unit." *Id.* "Rent" is further defined in section 1437f(c)(1) (describing the fair market value standard used to determine the "maximum annual rent" to be paid to the owner) and in section 1437f(c)(2)(A) (requiring that the maximum rent be adjusted at least annually to reflect changes in value). It is the difference between the "rental" described in § 1437a(1) and the "maximum annual rent" described in § 1437f(c)(1) which constitutes HUD's obligation.

Congress thus established the benchmarks for calculating the amount which HUD will supply towards rent and utilities. These benchmarks also provide a high degree of predictability as to HUD's annual subsidization obligations, a concern consistent with per annum spending limits placed on HUD contribution contracts. 42 U.S.C. § 1437c(c). Providing each tenant a utility allowance on an annual basis is a reasonable way to implement this statutory scheme.

Perhaps in recognition of the flaws in his argument against any fixed annual utility allowance, plaintiff suggested in his brief, and urged more strongly at oral argument, that a fixed allowance would be appropriate so long as the allowance provided for average consumption plus 20 percent. Although plaintiff cites some unreported settlements which have purportedly used such a formula, plaintiff offers no argument as to why the statute requires it. Nor can plaintiff successfully maintain that the allowance used here, which is based on actual usage in the apartment complex in which he resides, is unreasonable.

■ We do not accept the government's position, however, that we should refuse to conduct any review of plaintiff's contentions on the theory that this matter has been so committed to agency discretion that there is "no law to apply." The Supreme Court has construed this exception to judicial review very narrowly. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136

(1971); *Johnson Oyster Co. v. Baldridge,* 704 F.2d 1060 at 1062 (9th Cir.1983). Since the gist of Clary's argument is that the utility allowance is contradictory to the statutory provisions governing tenants' contribution to rent, plaintiff raises "a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent." *Strickland v. Morton,* 519 F.2d 467, 470 (9th Cir.1975); *see also Johnson Oyster Co. v. Baldridge,* 704 F.2d at 1062 (review required where agency action allegedly violates legal mandates or restrictions). Thus, this case is wholly unlike suits seeking judicial review of each decision which affects the amount of rent to be charged in a housing project. In those suits courts have found such decisions to be committed to agency discretion and inappropriate for judicial review. *See, e.g., Frakes v. Pierce,* 700 F.2d 501 (9th Cir.1983); *Harlib v. Lynn,* 511 F.2d 51 (7th Cir.1975); *Hahn v. Gottlieb,* 430 F.2d 1243 (1st Cir.1970). The courts' reluctance in those cases to supervise incremental changes in the day-to-day landlord tenant relationship in public housing is understandable. We run no similar risk by deciding the issues in this case.

We touch briefly upon one final issue. Plaintiff argues, though not strenuously, that he was entitled to summary judgment because the Secretary has somehow failed to respect an energy conservation policy embodied in various federal laws. Plaintiff does not attempt to harmonize his positions on appeal by offering to explain how the reimbursement of total utility costs by the federal government will help to conserve energy usage. The merits of the issue need not be reached, however, because plaintiff's attack is misconceived.

This suit was originally brought not only against the HUD defendants, appellees here, but also against state and local agencies and Portneuf Towers. Pursuant to a settlement, all of the non-federal defendants were dismissed, and the owner agreed to make repairs and alterations rendering Portneuf more energy efficient. To the extent that plaintiff continues to contend in this proceeding against HUD that it has violated a statutory energy conservation re-quirement, HUD correctly responds that plaintiff's theory is untenable. The only specific provision to which plaintiff can point, 42 U.S.C. § 1437d(b), is not applicable to housing subsidized under section 8. 42 U.S.C. § 1437f(h).

Affirmed.

WALLACE, Circuit Judge, concurring:

I concur that the judgment of the district court should be affirmed but do so on the basis that the issue involved in this case is beyond judicial review. Although the question is not free from doubt, it seems to me that Congress intended the ultimate decision-making authority in this area to be the administrative agency rather than the courts. *See Frakes v. Pierce,* 700 F.2d 501 (9th Cir.1983).