Pursuant to the memorandum filed herein this day,

IT IS HEREBY ORDERED that defendant's motion for judgment notwithstanding the verdict on plaintiff's claim of tortious interference with business relations is denied.

IT IS FURTHER ORDERED that defendant's motion for new trial on plaintiff's claim of tortious interference with business relations is denied on condition that plaintiff file a remittitur to reduce punitive damages on this claim to $100,000. If plaintiff does not file such remittitur within 20 days of the date of this order, a new trial on the issue of damages on plaintiff's claim of tortious interference will be granted.

IT IS FURTHER ORDERED that defendant's motion for judgment notwithstanding the verdict on plaintiff's claim under § 1 of the Sherman Act, 15 U.S.C. § 1, is granted. If this judgment is hereafter vacated or reversed, then, IT IS FURTHER ORDERED that defendant's motion for a new trial on plaintiff's claim under § 1 of the Sherman Act is granted.

IT IS FURTHER ORDERED that plaintiff's motion for new trial or for judgment notwithstanding the verdict on defendant's counterclaim of indebtedness on account is denied.

IT IS FURTHER ORDERED that plaintiff's motion to amend the judgment to add prejudgment interest on plaintiff's antitrust claim is denied as moot.

IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees on the antitrust claim is denied as moot.

**UNITED STATES of America, Plaintiff,**

v.

**DREXEL VIEW II, LIMITED, a California Limited Partnership, Johansen Water Heater Company, Peoples Gas, Light & Coke Company, Defendants.**

**No. 86 C 7200.**

United States District Court,
N.D. Illinois, E.D.

June 8, 1987.

Anton R. Valukas, U.S. Atty., by Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Clarence J. Crooks, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This order concerns plaintiff's motion to secure possession by the Department of Housing and Urban Development (HUD) of property which is the subject of a pending foreclosure suit. For the reasons stated herein, plaintiff's motion is granted.

### I. FACTS

The relevant facts do not appear to be in dispute. Defendant Drexel View II, Limited, a California limited partnership (Drexel View), purchased a low and moderate income housing development from HUD in 1980 for $256,500. To finance the acquisition and rehabilitation of the development, Drexel View obtained a loan in April 1981 for $717,500 from a private lender secured by a HUD insured mortgage note on the property. Drexel View first defaulted on the mortgage note in June 1983 and filed for voluntary bankruptcy in September 1984. In February 1984 the private lender assigned the mortgage note and mortgage to HUD and received payment of its insurance claim. Since the assignment to HUD, Drexel View made several unsuccessful attempts to work out its financial problems. However, only nine payments on the mortgage note have been received by HUD as of the date of this order. Moreover, HUD has been forced to advance over $147,000 in funds to satisfy outstanding real estate taxes.

Presently, Drexel View owes HUD over $1.2 million for principal, interest, and late penalties as well as for funds advanced by HUD for payment of real estate taxes. As little doubt exists Drexel View will have sufficient funds to pay the most recent installment of real estate taxes on the property, HUD will soon be forced to advance additional funds. Affidavits submitted by HUD personnel indicate the physical condition of the development is steadily deteriorating and that HUD Housing Quality Standards are not being met. Moreover, the last accounting report submitted by Drexel View to HUD (October 1986) indicates the tenants' security deposit account is underfunded by approximately $19,000.

### II. DISCUSSION

In its instant motion, the government seeks to have HUD placed in possession of the mortgaged property subject to the terms of the mortgage allowing for a receiver to be appointed upon default. The government asserts and Drexel View does not dispute that giving HUD possession of the property and imposing strict reporting requirements on HUD is the equivalent of appointing a receiver. *See United States v. American Nat'l. Bank & Trust Co. of Chicago,* 573 F.Supp. 1317, 1318 (N.D.Ill. 1983); *Real Estate Finance Law,* §§ 4.30–32 (1979 Ed.). Thus, the issue presented is whether circumstances exist for enforcing the mortgage provision which calls for the appointment of a receiver prior to consummation of foreclosure proceedings.

Paragraph 5 of the mortgage provides that in the event of default the "mortgagee

shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the property described herein and operate same and collect rents, profits and income therefrom." When faced with situations where a mortgagee has defaulted under a HUD insured mortgage containing the above provision, courts have not hesitated to appoint a receiver. *See e.g., United States v. Queen's Court Apartments, Inc.*, 296 F.2d 534 (9th Cir.1961) (receivership directed during pendency of foreclosure action); *United States v. View Crest Garden Apartments, Inc.*, 268 F.2d 380 (9th Cir.1959) (order denying receiver reversed on interlocutory appeal); *Garden Homes, Inc. v. United States*, 207 F.2d 459 (1st Cir.1953) (order appointing receiver affirmed); *United States v. Mountain Village Co.*, 424 F.Supp. 822, 828 (D.Mass. 1976) (government entitled to appointment of a receiver in accordance with the terms of the mortgage agreement); *United States v. American Nat'l. Bank & Trust Co. of Chicago*, 573 F.Supp. 1317 and 573 F.Supp. 1319 (N.D.Ill.1983) (government entitled to the appointment of a receiver in accordance with terms of the mortgage agreement, and any income derived from the project after the mortgagor defaulted on the loan belongs to the government).

Enforcing the receivership provision, courts have ruled that whether a receiver should be appointed was a matter of federal and not state law. *See e.g., United States v. View Crest Garden Apartments, Inc.*, 268 F.2d 380, 382–383 (9th Cir.1959). Thus, whether or not HUD makes an appropriate showing for the appointment of a receiver under state law is irrelevant. The issue is simply whether HUD, pursuant to federal law, is entitled to the appointment of a receiver under the circumstances in this case. A review of the facts in the present case leaves little doubt that HUD has met this burden.

First, courts interpreting similar or identical receivership provisions in HUD insured mortgages have found that proof of default was sufficient to warrant the appointment of a receiver. *See e.g., United*

*States v. American Nat'l. Bank & Trust*, 573 F.Supp. at 1318. The mortgage in the present case has been in default since it was assigned to HUD in February 1984. Had the bankruptcy court not automatically stayed any foreclosure proceedings against the assets of Drexel View, HUD would have initiated this action over three years ago. As such, the fact that the mortgage has been in default for over three years is sufficient to enforce the receivership provision.

Second, special circumstances exist in the present case which strongly support the appointment of a receiver. The mortgagor is insolvent and is currently in the process of pursuing a voluntary petition in bankruptcy. Drexel View's most recent monthly report reveals that the separate tenants' security deposit account is drastically underfunded. Moreover, the condition of the project is deteriorating. The government argues that HUD has already invested substantial sums of money in the property through the acquisition of the mortgage and the provision of rent subsidies to provide decent housing for low and moderate income families. HUD reports indicate that nearly $486,000 in expenditures is required to conduct repairs and maintenance which were deferred by Drexel View. Simply put, Drexel View does not have the funds to pay its bills, or properly maintain the building. Thus, equitable considerations weigh in favor of a receiver.

A final justification for appointing a receiver is the policies underlying the National Housing Act (NHA) through which HUD was empowered to fund the development. *United States v. American Nat'l. Bank & Trust Co.*, 573 F.Supp. at 1318. Government financing advances a central purpose of the NHA: providing suitable housing for low and moderate income families. *United States v. Winthrop Towers*, 542 F.Supp. 1042, 1044 (N.D.Ill.1982). If programs for government funding are to continue, the government must have its investments protected. *United States v. American Nat'l. Bank & Trust Co.*, 573 F.Supp. at 1318. Thus, once a mortgagor defaults, "the federal policy to protect the treasury and promote the security of federal invest-

ment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by use of federal credit—becomes predominant." *United States v. OCCI Co.,* 758 F.2d 1160, 1163 (7th Cir. 1985). In the instant case, the inability of Drexel View to pay real estate taxes on the development places the government's security in jeopardy. In light of the federal policy behind the NHA, the appointment of a receiver is required to protect the government's investment in the property in question.

In an attempt to resist the government's motion, Drexel View asserts that its financial difficulties which led to default and bankruptcy are directly attributable to HUD's refusal to grant requested increases in rent. Although Drexel View is presently unable to document this assertion, Drexel View requests that this court delay ruling on the receivership issue until the partnership is able to conduct discovery to substantiate its charges.

■ The government points out, however, that HUD records indicate the project was granted three rent increases between June 1982 and August 1984. HUD records do not reflect any rent increase requests after August 1984 until October 1986, one month after the government instituted the present foreclosure proceeding. Thus, the allegation that HUD refused to grant rent increases is not supported by the discovery sought by Drexel View. Even if Drexel View were able to offer proof its rent increases were refused, Drexel View fails to assert the alleged denials were arbitrary and capricious. The law is clear that the decision to approve or deny increases in rent is a matter committed to the agency's discretion. *See United States v. Prince Hall Village, Inc.,* 789 F.2d 597, 600 (7th Cir.1986). A defense to foreclosure based on denial of rent increases is established only when it is shown the refusal resulted from arbitrary and capricious conduct. *Id.* As no such assertion is advanced by Drexel View, its defense must fail.

■ Finally, Drexel View argues that the appointment of a receiver would allow the government to defeat a potential sale of the mortgage premises. Drexel View notes that a workout proposal approved by HUD in October 1985 allows the sale of the mortgaged premises to a prospective purchaser pursuant to HUD insured financing. Since sale of the mortgaged premises would obviate the need for foreclosure, Drexel View asserts the appointment of a receiver is unnecessary and may only serve as an impediment.

A review of the October 1985 proposal, however, shows that approximately $500,000 over and above what would be available from HUD insured mortgage proceeds is required to discharge the unpaid indebtedness to HUD on the present mortgage. Drexel View provides no information as to the source of funds to pay the shortgall. Before any sale of the mortgage premises can result, a new proposal addressing the $500,000 deficiency must be accepted. HUD possesses considerable discretion to deny or approve workout agreements once foreclosure proceedings have begun. *United States v. OCCI Co.,* 758 F.2d 1160, 1164–65 (7th Cir.1985). Denying the government's motion would simply provide Drexel View with additional leverage to influence HUD's decision making process in evaluating deviations from the approved workout proposal. Granting the government's motion will allow HUD unencumbered discretion to protect the government's investment in keeping with the predominant policy of the NHA. *See United States v. OCCI Co.,* 758 F.2d at 1163.

Since the language of the mortgage, equitable considerations and policies of the NHA favor the appointment of a receiver, and Drexel View does not specifically object to placing HUD in possession of the premises in lieu of appointing a receiver, the government's motion is granted. This court hereby orders HUD be placed in possession of all mortgaged property, real, personal and mixed, including bank accounts associated with or derived in any way from the mortgaged property, tenants' security deposits, and all property of any nature in, on, or connected with or used in the operation of the mortgaged property. HUD, as the mortgagee in possession, shall

comply with all record and reporting requirements applicable to HUD insured mortgages and common law duties generally applicable to mortgagees in possession. *See Real Estate Finance Law,* §§ 4.30–35 (1979 Ed.).

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to place HUD in possession of the mortgaged premises is granted.

IT IS SO ORDERED.