**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**ANTIOCH FOUNDATION,**
**Defendant-Appellant.**

No. 86–1661.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1987.

Decided June 15, 1987.

Rehearing and Rehearing En Banc
Denied Aug. 31, 1987.

Clarence J. Crooks, Chicago, Ill., for defendant-appellant.

Gail C. Ginsberg, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., John H. Mahoney, Associate Regional Counsel, HUD, Chicago, Ill., for plaintiff-appellee.

Before WOOD and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Defendant-appellant, Antioch Foundation ("Antioch"), defaulted on its federally-insured mortgage in 1971. Under the terms of its mortgage and a regulatory agreement negotiated between Antioch and the United States Department of Housing and Urban Development ("HUD"), HUD could accelerate the debt in the case of default and could foreclose if the debt was not paid. HUD brought this foreclosure proceeding in 1985. The district court granted summary judgment for HUD, and Antioch appeals that decision. We affirm.

I.

On October 1, 1967, Antioch borrowed $5,750,000 from H.F. Philipsborn & Company to build an apartment complex in Chicago, Illinois. HUD agreed to insure repayment of the loan and subsidize Antioch's interest payments pursuant to the Below Market Interest Rate program (the "BMIR" program), 12 U.S.C. § 1715l. The purpose of the BMIR program is to reduce rent for low and moderate income families. In return for the insurance and subsidy, Antioch signed a regulatory agreement that allowed HUD to establish the maximum rent for the apartments and that obligated Antioch to serve low and moderate income families as defined under the BMIR program.

Antioch's mortgage note contained a clause providing for acceleration of the total amount due upon default:

> If default be made in the payment of any installment due under this note or the mortgage securing this note, and if such default is not remedied prior to the due date of the next maturing installment, or upon the breach of any covenant under the terms of the mortgage the holder of this note, at its option, and without notice may declare the whole of the principal sum or any balance thereof, and other sums of money secured by said mortgage immediately due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

Antioch's mortgage and its regulatory agreement with HUD contain similar default provisions.

Antioch defaulted on its mortgage payments in October 1971, and its then-mortgage holder, the Government National Mortgage Association ("GNMA"), subsequently assigned the note, mortgage and other instruments pertaining to the property to HUD. HUD was obligated to pay GNMA over $5 million from its insurance fund at that time. At the time of the default, HUD chose not to exercise its rights to demand immediate repayment and to take possession of the property. Instead, HUD allowed Antioch to continue operating the apartment complex in the hope that it could bring the loan current. Antioch, however, has failed to make subsequent payments sufficient to bring the loan current.

In July 1981, approximately ten years after Antioch defaulted, HUD filed a foreclosure suit and was placed in possession by court order entered July 22, 1981. HUD has remained in possession since that date. Summary judgment was entered in favor of HUD in October 1982. This suit was dismissed by the court without prejudice a year later because the parties

thought at that time that another workout agreement could be arranged.

The workout agreement fell through, and HUD's position on the loan steadily deteriorated. As of March 31, 1985, Antioch was delinquent on its interest payments in the amount of $1.2 million. HUD had also paid over $4 million to cover the real estate taxes and to preserve the condition of the property.

In light of these circumstances, HUD brought the present foreclosure proceeding in May 1985. Antioch admitted the default but argued that HUD violated the regulatory agreement by preventing Antioch from "charging the rents in sufficient and adequate amounts" to pay the note. The government moved for summary judgment in October 1985, and it tendered an affidavit establishing the amount of the accelerated indebtedness. After being granted an extension of time to respond to the government's motion, Antioch filed a motion in opposition to summary judgment with an affidavit attached; in the alternative, Antioch requested a continuance even though it apparently had failed to conduct any discovery previously during the course of the litigation.[1] The district court held that "HUD's failure to raise rents is not a defense to the foreclosure action." Because the fact of default and the amount due and owing were established by uncontroverted evidence, the court granted HUD's motion for summary judgment on February 7, 1986 and entered judgment against Antioch. Antioch appeals.

## II.

This court has repeatedly held that, in determining when to foreclose following a default, HUD has very broad discretion in order to achieve national housing objectives. *United States v. Prince Hall Village, Inc.,* 789 F.2d 597, 599 (7th Cir.1986); *United States v. OCCI Co.,* 758 F.2d 1160, 1162 (7th Cir.1985); *United States v. Winthrop Towers,* 628 F.2d 1028, 1036 (7th Cir.1980). As the Eighth Circuit noted in

---

1. The government asserts that Antioch has conducted no discovery in this suit, and Antioch

has not denied this claim.

*United States v. Victory Highway Village, Inc.,* 662 F.2d 488, 495 (8th Cir.1981), a decision upholding foreclosure:

> HUD's decision to foreclose is properly supported by considerations of minimizing losses from its insurance fund, preserving the assets of the insurance fund so that more projects may be insured in the future, and protecting public money from unnecessary risk.

■ HUD's foreclosure power, although broad, is not without limits. HUD's decision to foreclose an insured mortgage is subject to review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* The courts will set aside a foreclosure action that is arbitrary or capricious or that is an abuse of discretion. *Id.* § 706(2). *See Prince Hall,* 789 F.2d at 600. The burden is on the mortgagor to introduce evidence showing arbitrary or capricious conduct. *Id.*

■ In opposing the foreclosure action, Antioch claims that its financial problems were due to HUD's failure to authorize adequate rent increases which forced Antioch to rent to families with lower incomes than it had contracted to serve. Antioch's contention that HUD's actions were arbitrary or capricious is almost wholly unsupported.[2] In opposing HUD's summary judgment motion, Antioch submitted the affidavit of the Reverend Wilbur N. Daniel, the president of Antioch. This affidavit, however, fails to establish any issue of material fact. In this respect, this case is on all fours with *Prince Hall.* As in *Prince Hall,* the mortgagor here has submitted no evidence indicating the "amounts of the rent increases which were denied or how these denials caused [the mortgagor's] initial or continuing default." 789 F.2d at 600. Even if such information had been provided, the denial of a rent increase is not in itself arbitrary or capricious conduct. As in *Prince Hall,* the developer here entered into the project knowing that HUD had the power under the regulatory agreement to control rent increases. Antioch's affidavit indicates only that HUD allowed Antioch a rent increase of 15% in 1978 while Antioch thought that it was entitled to a 35% hike. Antioch, however, makes no attempt to explain why this decision, which was made seven years after its default, was arbitrary or capricious.

■ We also reject Antioch's defense based on the contractual doctrine of impossibility of performance. Antioch's note and mortgage each contain an unconditional promise to repay the money it borrowed with interest within the specified period. Antioch alone assumed the risk that it might not be able to pay back the loan. Neither HUD nor any prior mortgagee conditioned its right to repayment on the availability of sufficient project income. *See Maple Hill Apartment v. Pierce,* No. 83–1006, slip op. at 22 (E.D.Mich. April 24, 1985), *aff'd,* 798 F.2d 1415 (6th Cir.1986) (per curiam); *United States v. Sherman Gardens Co.,* 298 F.Supp. 1332, 1334 (D.Nev.1967). Further, as noted, Antioch has not alleged or made a showing of specific facts which support its argument that HUD's decisions on rent levels contributed to its default.

---

**2.** HUD argues that its decisions respecting mortgagors' requests for rent increases are unreviewable. As the agency correctly notes, a number of circuits, including this one, have held that challenges to rent increases brought by *tenants* are beyond judicial review. *See Frakes v. Pierce,* 700 F.2d 501, 505–06 (9th Cir.1983); *Falzarano v. United States,* 607 F.2d 506, 512–13 (1st Cir. 1979); *Harlib v. Lynn,* 511 F.2d 51, 56 (7th Cir.1975); *Langevin v. Chenango Court, Inc.,* 447 F.2d 296, 303–04 (2d Cir.1971); *Hahn v. Gottlieb,* 430 F.2d 1243, 1249–51 (1st Cir.1970). We need not decide whether a challenge to a rent increase brought by the *mortgagor* is also unreviewable since the defense based on denial of rent increases here has not met the arbitrary and capricious standard. We note in passing, however, that some of the reasoning underlying the tenant cases cannot easily be extended to a case in which the mortgagor is challenging the rent decisions. Rent increases challenged by tenants have been found unreviewable in part because the spectre of such suits might discourage participation by developers and because HUD takes into account the interests of the tenants in reviewing a request for a rent increase. If decisions on rent levels are not reviewable under some standard at the behest of the developers, however, private investors might be reluctant to become involved in such projects.

■ We also reject Antioch's claim that it should be granted additional time to enable it to conduct discovery.[3] Antioch failed to take advantage of the opportunities it had to conduct discovery. The government filed this foreclosure action in May 1985, and it moved for summary judgment five months later; Antioch does not deny HUD's claim that it has failed to engage in any discovery during this entire period. Antioch apparently attempted to use a similar delaying tactic during the first foreclosure suit brought on the same property at issue here. In this prior suit, Antioch moved for a continuance to prepare a response to HUD's summary judgment motion. The court denied this request because Antioch had failed to undertake any discovery despite the fact that the suit had been pending for well over a year. *United States v. Antioch Foundation*, No. 81 C 4088, slip op. at 2 (N.D.Ill. Oct. 5, 1982).

Further, Antioch has failed to indicate with any degree of specificity relevant facts it thinks will come to light through discovery. Although the affidavit of the Rev. Daniel and Antioch's reply brief on appeal raise areas that Antioch claims it would explore if it had more time, these suggested avenues either are irrelevant to the issue here or involve conclusory statements about HUD's conduct. We see no reason to perpetuate this suit by remanding this question for consideration by the district court.[4]

The decision of the district court is

AFFIRMED.

---

**3.** Because the district court concluded that HUD's failure to raise rents was not a defense to a foreclosure action as a matter of law, it did not have to rule on Antioch's motion for a continuance.

**4.** Antioch's argument based on substantive due process is without merit.